## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JEFFREY H. REDFERN & ANANT N. PRADHAN<br><br>Plaintiffs,<br><br>v.<br><br>JANET NAPOLITANO, in her official capacity as Secretary of Homeland Security<br>U.S. Department of Homeland Security<br>Washington, DC 20528<br><br>JOHN PISTOLE, in his official capacity as Administrator of the Transportation Security Administration<br>601 S. 12th Street<br>Arlington, VA 20598<br><br>Defendants. | Civil Action No: 1:10-cv-12048-JLT<br><br>**AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br><br><br>Plaintiffs waive jury trial. |

## PRELIMINARY STATEMENT

1.  Plaintiffs Jeffrey Redfern and Anant Pradhan are regular air travelers who object to the Transportation Security Administration's ("TSA") use of "nude body scanners" to generate images of their bodies at airport security checkpoints, as well as "enhanced pat downs" that require the touching of their genital areas by TSA officers. Plaintiffs have already been subject to the "enhanced pat downs" and find them to be very intrusive.

2.  The TSA has stated that it is now using these nude body scanners as its "primary" screening method, and that all passengers will be required to

submit to their use wherever these scanners are available, or else submit to an enhanced pat down.

3.  As Logan Airport uses these scanners, and as Plaintiffs' have purchased tickets for future air travel and regularly travel by air, Plaintiffs will again be subjected to the aforementioned treatment.

4.  By using nude body scanners and enhanced pat downs as primary screening tools, the TSA has violated and will continue to violate Plaintiffs' Fourth Amendment right against unreasonable searches and seizures, as well as their right to privacy and right to interstate travel. Plaintiffs respectfully seek a declaration that mandatory screening using these techniques is unconstitutional, and a permanent injunction against use of either technique without reasonable suspicion or probable cause.

## JURISDICTION AND VENUE

5.  This case arises under the United States Constitution and the laws of the United States and presents a federal question within this Court's jurisdiction under Article III of the United States Constitution and 28 U.S.C. § 1331. The Court has authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. The Court has authority to award costs and attorneys' fees under 28 U.S.C. § 2412.

6.  Plaintiffs have no adequate administrative remedy for these constitutional claims. *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991).

7.  Venue is appropriate because Plaintiffs' rights were violated at Logan Airport, they regularly fly out of Logan Airport and are residents of the State of Massachusetts. 28 U.S.C. § 1391(e).

## PARTIES

8.  Plaintiffs are regular fliers that reside in the State of Massachusetts.

9.  Defendant Janet Napolitano is the Secretary of the Department of Homeland Security ("DHS"), the governmental body which oversees the Transportation Security Administration ("TSA"). As head of the DHS, Secretary Napolitano has authority over TSA policies, procedures, and practices relating to airline and airport security measures, including those challenged in this lawsuit. Defendant Napolitano is sued in her official capacity.

10. Defendant John Pistole is the administrator of the TSA. He has authority over policies, procedures, and practices relating to airline and airport security measures, including those challenged in this lawsuit. Defendant Pistole is sued in his official capacity.

## ALLEGATIONS OF FACT

11. On or about the beginning of November 2010, the TSA significantly deployed new procedures for airport security screening across the United States.

12. These procedures now call for the use of nude body scanners, also known as "AIT devices," "backscatter x-rays," and according to a media report of

at least one TSA agent's words, a "dick-measuring device," as the "primary" inspection device, where formerly the primary inspection device was a metal detector.

13. These nude body scanners produce clear images of the nude body of the searched party.

14. The new procedures allow for travelers to "opt-out" of being subjected to a nude body scanner, instead receiving an enhanced pat down.

15. An enhanced pat down is different from the pat downs the TSA formerly used, and in accordance with TSA rules, involves the touching of the genitals, buttocks, and, in the case of female passengers, breasts, of the individual being screened.

16. Travelers are not permitted to "opt-out" of the enhanced pat down and receive a standard pat down (the former, less invasive pat down technique) and/or a metal detection inspection.

17. There have been at least 2 reported incidents of travelers (reported as Meg McLain and John Tyner) who have refused both new procedures. Both passengers were forced to leave the screening area.

18. The TSA admitted, through TSA employee Mike Aguilar, on or about November 15th, 2010, that it had threatened Mr. Tyner with a $10,000 civil penalty at the airport for failure to submit to having his genitals touched, and that it actually may prosecute for up to $11,000.

19. Upon information and belief, the TSA has had no public hearings or studies on the efficacy of the nude body scanners.

20. Upon information and belief, the TSA has had no public hearings or studies on the efficacy of enhanced pat downs.

21. There are over 600 million domestic airline passengers per year, and since 2001, none have died from terrorism-related causes.

22. The TSA justifies the new procedures by asserting simply that "the threat of non-metallic explosives is real," and referencing the "underwear bomber" who, as a passenger on a flight from Amsterdam to Detroit, unsuccessfully attempted to detonate an explosive device hidden in his underwear.

23. Upon information and belief, the Defendant has, through a GAO study, determined nude body scanners likely would not have detected the explosives on the underwear bomber.

24. According to an experiment conducted by a BBC documentary team, even if the underwear bomber had successfully detonated his weapon, casualties would have been minimal, and the plane's fuselage would not have ruptured.

25. The millimeter-wave technology used in the more common nude body scanners is not suited to detecting plastic explosives.

26. The TSA has not claimed, and it stands against reason, that either the nude body scanners or the enhanced pat downs would detect an explosive hidden in a body cavity.

27. The TSA has many other effective and less invasive options available to it, including but not limited to metal detectors (both freestanding and hand

5

wands), standard pat downs, explosive trace detection (both via swab and via "puffer machine"), explosive sniffing dogs, behavioral analysis, traveler databases (including the no-fly list), intelligence gathering, ProVision ATD (scanners which use software to create a gender-neutral, blob-like human image, instead of generating a virtually naked image of the passenger), and others.

28. Despite assurances by the TSA that images could not be saved, it is now known that the scanners possess the capability of saving images and the TSA has provided no guarantee that images will not be saved.

29. Images are viewed by individuals of both genders regardless of whether the scanned person is male or female.

30. No medical publications, journal, or otherwise has approved of the backscatter technology and the long-term and short-term radiation effects of repeated scans remains unknown.

31. On September 22, 2010, Plaintiff Jeffrey H. Redfern was traveling to Washington, D.C., on Delta Airlines, through New York LaGuardia Airport. When directed to go through the nude body scanner, Redfern complied. He did not at that time know that the scanner produced clear images of his nude body, nor that he had the option of selecting an alternative screening method.

32. After the scan was completed, a TSA agent, who was speaking via radio with the agent viewing the images, referred to Redfern as "the male." This was the first time Redfern realized how invasive the scanners are.

6

33. On November 17th, 2010, Redfern was traveling to Washington, D.C., on JetBlue through Boston Logan International Airport. When directed to go through the nude body scanner, Redfern elected to opt out and was subjected to an enhanced pat down.

34. On November 24th, 2010, Plaintiff Anant N. Pradhan was traveling to Dallas, TX, on American Airlines, through Boston Logan International Airport. When directed to go through the nude body scanner, Pradhan elected to opt-out and was subjected to an enhanced pat down.

35. Plaintiffs found the process highly intrusive including touching, better described as prodding and lifting of the genitals and buttocks.

36. Plaintiffs have already purchased tickets departing from United States airports with nude body scanners, departing within the next 30 days, to visit family and friends across the United States.

37. Plaintiffs have also purchased tickets departing from the United States to Switzerland, departing in the next year.

38. The enhanced pat down procedure, if done non-consensually, would amount to a sexual assault in most jurisdictions, and the intrusion of peering under his clothes would be similarly illegal.

## CLAIM FOR RELIEF

39. A mandatory pre-flight search in which the searching party necessarily sees the nude body of the party being searched, either directly or through the use of imaging equipment, with neither probable cause nor warrant, is an unreasonable search under the 4th Amendment.

40. A mandatory pre-flight search in which the searching party necessarily touches, prods, and lifts the genitals, buttocks of the party being searched, with neither probable cause nor reasonable suspicion, is an unreasonable search under the 4th Amendment.

41. The above searches violate the constitutionally protected right to privacy. *Griswold v. Connecticut*, 381 U. S. 479, 484–85 (1965).

42. The above searches violate the constitutionally protected right to travel using the instrumentalities of interstate commerce. *United States v. Guest*, 383 US 745, 757–58 (1966).

43. The abstract risk of terrorism without a credible, specific threat (with information such as at least some of the following: date/time, location, description of parties involved, plot details, etc.) does not justify the above searches.

44. The above searches are further unjustified because they have not been proven to be any more effective than the less invasive options described in paragraph 27.

## PRAYER FOR RELIEF

45. Declaratory relief stating that the new procedures as described herein constitute an unreasonable search under the 4th Amendment, and that these procedures violate the constitutional right to privacy and to interstate travel, except that nothing herein shall be interpreted as preventing the Defendant from using these methods as optional screening methods or as

methods of screening when probable cause or other reasonable suspicion would make it prudent.

46. Permanent injunctive relief, preventing defendants from using the nude body scanners or enhanced pat downs as a primary screening procedure, except when probable cause or other reasonable suspicion would make it prudent.

47. Permanent injunctive relief, preventing defendants from storing any images taken with the nude body scanners except as necessary for prosecution of suspected terrorists.

48. Awarding Plaintiffs damages as compensation for defendants' unconstitutional conduct, and all other legally damages legally allowed.

49. Reasonable attorney fees, should Plaintiffs retain an attorney, and only for work done by such an attorney.

50. Any other such relief as the court deems appropriate.

Respectfully submitted,

Jeffrey H. Redfern
*Plaintiff, Pro Se*
1622 Massachusetts Ave. Apt. #7
Cambridge, MA 02138
E-mail: Jeffreyredfern@hotmail.com

Anant N. Pradhan
*Plaintiff, Pro Se*
1600 Massachusetts Ave. Apt. #305
Cambridge, MA 02138
E-mail: Pradhan.Anant.N@gmail.com