# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| **JEFFREY H. REDFERN & ANANT N. PRADHAN,** )<br><br>    **Plaintiffs,** )<br><br>    **v.** )<br><br>**JANET NAPOLITANO, in her official as Secretary of Homeland Security and JOHN PISTOLE, in his official capacity as Administrator of the Transportation Security Administration,** )<br><br>    **Defendants.** ) | **Civil Action No. 10-12048-DJC** |

_____

## MEMORANDUM AND ORDER

**CASPER, J.**                                                    May 9, 2011

## I.    Introduction

Plaintiffs Jeffrey H. Redfern and Anant N. Pradhan ("Plaintiffs") bring this action to challenge and enjoin the Transportation Security Administration's ("TSA") new procedure for screening airline passengers.  In their lawsuit against Defendants Janet Napolitano, Secretary of the United States Department of Homeland Security, and John Pistole, Administrator of the TSA (collectively, "Defendants"),  Plaintiffs claim that TSA's use of Advanced Imaging Technology machines ("AIT scanners") and alternative enhanced pat-down procedures violates their rights under the Fourth Amendment and their rights to privacy and interstate travel.  Defendants move to dismiss for lack of subject matter jurisdiction.  For the reasons set forth below, Defendants' motion to

dismiss is GRANTED.

## II.     Background

After September 11, 2001, Congress created TSA "to prevent terrorist attacks and reduce the vulnerability of the United States to terrorism within the nation's transportation networks." (Declaration of Lee R. Kair, Assistant Administrator for Security Operations for TSA, attached as Ex. 1 to Def. Memo. ("Kair Decl.") ¶ 8).   Congress specifically charged the head of the TSA with the overall responsibility for civil aviation security.  49 U.S.C. § 114(a)-(b), (d);[1] 6 U.S.C. § 202(1). Under 49 U.S.C. §§ 44901-902, Congress directed the Undersecretary of Transportation for Security (the head of the TSA) to provide for the screening of all passengers and property before boarding an aircraft to ensure that no passenger is unlawfully carrying a dangerous weapon, explosive or other destructive substance.    To that end, Congress has mandated that the Secretary of Homeland Security  give "high priority to developing, testing, improving, and deploying" technologies at airport screening checkpoints to detect "nonmetallic, chemical, biological, and radiological weapons, and explosives, in all forms, on individuals and in their personal property," including such weapons and explosives that "terrorists would likely try to smuggle aboard." 49 U.S.C. § 44925(a). Congress further authorized the Secretary of Homeland Security to provide TSA with funds for "research, development, and installation of detection systems and other devices for the detection of biological, chemical, radiological, and explosive materials."  49 U.S.C. § 44925(c).

In carrying out its mandate of providing aviation security, TSA issues Standard Operating

---

[1]Section 114 provides: "The Transportation Security Administration shall be an administration of the Department of Transportation . . . .   The head of the Administration shall be the Under Secretary of Transportation for Security. . . ."  49 U.S.C. § 114 (a)-(b)(1); see also 6 U.S.C. § 202(1).

Procedures ("SOPs") that apply to specific aspects of the security screening process and which set forth the uniform procedures and standards that must be followed in TSA's security operations. (Kair Decl. ¶ 10).  TSA's "Screening Checkpoint" SOP sets forth the mandatory procedures that TSA screening officers must apply in screening passengers at all airport checkpoints and with which passengers must comply prior to boarding a commercial aircraft.  (Kair Decl. ¶ 10).

On September 17, 2010, the Administrator of TSA, Defendant Pistole, issued a newly revised Screening Checkpoint SOP, which had an implementation date of October 29, 2010.   (Kair Decl. ¶ 11).[2] This SOP included the most recently updated procedures for detecting nonmetallic explosive devices and weapons and directed the use of AIT scanners as well as the revised pat-down procedures.   (Kair Decl. ¶ 11).  As of January 2011, TSA has deployed 486 AIT scanners to approximately 78 airports nationwide. (Kair Decl. ¶ 19).  A traveler may opt-out of being subjected to the AIT scanner and instead receive an enhanced pat-down (Kair Decl. ¶ 21), but is not permitted to opt-out of the enhanced pat-down and receive a less invasive standard pat-down or metal detection inspection.  (Amended Complaint ("Am. Compl.") ¶ 16).

Plaintiffs Jeffrey Redfern and Anant Pradhan are air travelers who object to TSA's use of AIT scanners and the enhanced pat-downs at airport security checkpoints.  On September 22, 2010, Redfern traveled to Washington, D.C. through New York LaGuardia Airport and was screened by an AIT scanner. (Am. Compl. ¶ 31).  Redfern traveled again to Washington, D.C. on November 17,

---

[2]Defendants have not provided a copy of this SOP to the Court nor has it been publicly released because, as Defendants contend, it constitutes Sensitive Security Information, pursuant to 49 U.S.C. § 114(r) and 49 C.F.R. parts 15 and 1520.  (Kair Decl. ¶ 10 n.1).  Given the allegations in the Amended Complaint and the evidence outside of the pleadings upon which the Court may rely for deciding a motion to dismiss for lack of subject matter jurisdiction, Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002), the Court did not need to review the SOP itself to resolve this motion.

2010 through Boston Logan International Airport ("Logan"), and when he was directed to go through the AIT scanner, he elected to opt out of this screening method and instead chose the enhanced pat-down.  (Am. Compl. ¶ 33).  Subsequent to filing this action, Redfern traveled to Washington, D.C. through Logan on January 6, 2011 and was directed to go through the AIT scanner, and when he refused, was subjected to an enhanced pat-down.  (Redfern Declaration, attached as Ex. 1 to Pl. Opp. ("Redfern Decl.") ¶ 1).

On November 24, 2010, Plaintiff Pradhan traveled to Dallas, Texas through Logan and was directed to go through the AIT scanner, but Pradhan elected to opt out of this screening method and instead chose the enhanced pat-down.  (Am. Compl. ¶ 34).  Subsequent to the filing of this action, Pradhan flew on six separate occasions, flying to and from various airports in the United States which all used AIT scanners and enhanced pat-downs at security checkpoints.  (Pradhan Declaration attached as Ex. 2 to Pl. Opp. ("Pradhan Decl.") ¶¶ 1-6).  In three instances, Pradhan refused to go through the AIT scanner at the airport's security checkpoint and was subjected to the enhanced pat-down. (Pradhan Decl. ¶¶ 1-6).

Plaintiffs allege that the abstract risk of terrorism without a specific threat does not justify the new screening procedure.  (Am. Compl. ¶ 43).  They claim that the procedure is also unjustified because it has not been proven to be any more effective than less invasive screening methods.  (Am. Compl. ¶ 44).  In alleging that TSA's use of AIT scanners and pat-down procedures violates their Fourth Amendment rights and rights to privacy and interstate travel, Plaintiffs specifically allege that the AIT scanners produce clear images of a traveler's nude body (Am. Compl. ¶ 13) and that although the scanners possess the ability to save the generated images of a person's body, TSA has provided no guarantee that these images will not be saved.  (Am. Compl. ¶ 28).  As to the pat-down

procedures, Plaintiffs further allege that they were highly intrusive and degrading  (Am. Compl. ¶ 35; Redfern Decl. ¶ 1; Pradhan Decl. ¶¶ 1, 2, 5).

## III.    Procedural History

On November 29, 2010, Plaintiffs filed a complaint against Defendants seeking to permanently enjoin Defendants from using AIT scanners, storing images taken with those machines and using the new  pat-down procedures to screen airline passengers.  (Docket #1).  Defendants also sought declaratory judgment that such procedures violate the Fourth Amendment.   On December 14, 2010, Plaintiffs filed an amended complaint seeking, in addition to the declaratory and injunctive relief in their original complaint, declaratory judgment that the TSA procedures violate the constitutional right to privacy and interstate travel.  (#7).

Defendants have now moved to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  This matter was transferred to this session on January 20, 2011 and the Court heard oral argument on April 12, 2011.

## IV.    Discussion

"Federal courts are courts of limited jurisdiction."  Picotto v. Cont'l Cas. Co., 512 F.3d 9, 17 (1st Cir. 2008) (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)) (internal quotation marks omitted).  Jurisdiction is "authorized by the Constitution and expressly conferred by Congress."  Destek Group, Inc. v. State of N.H. Pub. Utils. Comm'n, 318 F.3d 32, 38 (1st Cir. 2003).   "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) raises the fundamental question of whether a federal district court has subject matter jurisdiction over the claims before it."  United States v. Lahey Clinic Hosp., Inc., 399 F.3d 1, 8 n. 6 (1st Cir. 2005) (quoting 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE

§ 1350, at 61 (3d ed. 2004)) (internal quotation marks omitted).

The party invoking the jurisdiction of a federal court has the burden of proving jurisdiction exists.  Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995).  The Court must "construe the Complaint liberally and treat all well-pleaded facts as true, according the plaintiff the benefit of all reasonable inferences," id., but may also consider evidence outside the pleadings, such as submitted exhibits in deciding a motion to dismiss.  Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010); Gonzalez, 284 F.3d at 288 (attaching exhibits does not convert a Rule 12(b)(1) motion into one under Rule 56).  However, unsupported conclusions or interpretations of law that federal jurisdiction exists is insufficient to survive a motion to dismiss.  Murphy, 45 F.3d at 522.  "If there is any ambiguity as to whether jurisdiction lies with a district court or with a court of appeals" the ambiguity should be resolved "in favor of review by a court of appeals." Suburban O'Hare Comm'n v. Dole, 787 F.2d 186, 192 (7th Cir. 1986); Gen. Elec. Uranium Mgmt. Corp. v. Dep't of Energy, 764 F.2d 896, 903 (D.C. Cir. 1985).

### A.    The SOP is an "Order" Reviewable By the Court of Appeals Under 49 U.S.C. § 46110

The Federal Aviation Act provides that orders issued under 49 U.S.C. § 46110 are subject to review only in the United States Courts of Appeals.  Specifically, 49 U.S.C. § 46110(a) states:

> "[A] person disclosing a substantial interest in an order issued by the Secretary of Transportation (or the Under Secretary of Transportation for Security with respect to security duties and powers designated to be carried out by the Under Secretary or the Administrator of the Federal Aviation Administration with respect to aviation duties and powers designated to be carried out by the Administrator) in whole or in part under this part, part B, or subsection (l) or (s) of section 114 may apply for review of the order by filing a petition for review in the United

> States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides . . . ."

The statute further states that the Court of Appeals has "exclusive jurisdiction to affirm, amend, modify or set aside any part of [such an] order." Id. § 46110(c). Accordingly, if an agency action constitutes an "order," then the Courts of Appeals have exclusive jurisdiction over any challenge to that order. See, e.g., Aviators for Safe & Fairer Reg., Inc. v. F.A.A., 221 F.3d 222, 225 (1st Cir. 2000) (exclusive review over a challenge to the FAA pilot rest policy under § 46110 lays with the First Circuit); Merritt v. Shuttle, Inc., 245 F.3d 182, 187 (2d Cir. 2001) (noting that "[b]y its terms, Section 46110(c) precludes federal district courts from affirming, amending, modifying, or setting aside any part of such an order"); In re Sept. 11 Litig., 236 F.R.D. 164, 174 (S.D.N.Y. 2006) (characterizing Section 46110's application to TSA orders as being "without dispute"); see also City of Tacoma v. Taxpayers of Tacoma, 357 U.S. 320, 336 (1958) (statute vesting the Court of Appeals with exclusive jurisdiction to review an administrative order necessarily precluded de novo litigation between the parties of all issues and hearing in the controversy and all other modes of judicial review).

The SOP at issue here falls within the ambit of 49 U.S.C. § 46110. Section 46110 encompasses orders issued in whole or in part under 49 U.S.C. §§ 44901-903 and 44925, under which Congress mandated the Under Secretary of Transportation for Security, the head of the TSA, to provide for the screening of all passengers and property prior to boarding an aircraft and to prioritize deployment of new technologies which could detect nonmetallic explosives at airport screening checkpoints. TSA regulations require that passengers comply with screening procedures before entering the "sterile area" of an airport or boarding an aircraft. 49 C.F.R. §§ 1540.107(a);

see also 49 U.S.C. §§ 44901-903.  Thus, the Administrator of the TSA issued the Screening Checkpoint SOP to implement these statutory and regulatory mandates regarding TSA screening procedures.

Although the term "order" in Section 46110 is not defined in the statute, as the First Circuit has noted, "[t]he term 'order' is read expansively in review statutes generally . . . and this statute specifically." Aviators, 221 F.3d at 225.  Other circuits have similarly read the term broadly. MacLean v. Dep't of Homeland Sec., 543 F.3d 1145, 1149 (9th Cir. 2008); Aerosource, Inc. v. Slater, 142 F.3d 572, 577-78 (3d Cir. 1998);  City of Alexandria v. Helms, 728 F.2d 643, 646 (4th Cir. 1984).  For an agency action to be an "order" under Section 46110, it must be "final" and cannot merely be a "proposal." Aviators, 221 F.3d at 225; Aerosource, 142 F.3d at 577.  To be final, the agency action must be a "definitive statement on the subject matter it addressed," City of Alexandria, 728 F.2d at 646, and must "impose an obligation, deny a right, or fix some legal relationship." Aerosource, 142 F.3d at 578; Green v. Brantley, 981 F.2d 514, 519 (11th Cir. 1993) (same).  The order need not be "a formal order, the product of formal decision-making process, or be issued personally by the Administrator." Aerosource, 142 F.3d at 578.

Additionally, other courts have held that analogous security screening requirements are "orders" under Section 46110.   For example, courts have held that the requirement for airline passengers to present identification prior to boarding, Gilmore v. Gonzales, 435 F.3d 1125, 1133 (9th Cir. 2006) cert. denied, 549 U.S. 1110 (2007); TSA security directives establishing No-Fly or Selectee lists for enhanced screening, Green v. TSA, 351 F. Supp. 2d 1119, 1124-25 (W.D. Wash. 2005); the use of X-ray devices for inspecting carry-on baggage, Sima Prods. Corp. v. McLucas, 612

F.2d 309, 312 (7th Cir. 1980);[3] and security directives to commercial airlines charged with screening passengers, Scherfen v. DHS, No. 08-1554, 2010 WL 456784, at *11 (M.D. Pa. Feb. 2, 2010) are "orders" under Section 46110.

Based upon the allegations in the amended complaint and the exhibits submitted in support of the motion to dismiss and in light of the First Circuit's interpretation of the term "order" as well as the manner in which it has been interpreted by other courts, the SOP at issue here is an order of the TSA. The SOP is a final, definitive statement of TSA's screening procedures and requirements at airport security checkpoints. It sets forth procedures that airport security screening personnel are required to impose on travelers who are in turn subjected to TSA's mandatory screening procedures, including the AIT scanners and pat-downs, in order to board any aircraft. If travelers refuse to submit to such screening requirements, they are not permitted to fly by commercial airline. The screening procedure is a final policy that imposes binding requirements or conditions on airline passengers and is thus an order of the TSA.

### 1. Even in the Absence of Public Notice and Comment, the SOP is an Order Under 49 U.S.C. § 46110

Plaintiffs' argument that the SOP in this case cannot be an order because there was no formal

---

[3] The judicial review provision of section 46110 was previously codified in 49 U.S.C. § 1486, which was the statute at issue in Sima Prods, 612 F.2d at 309 and City of Alexandria, 728 F.2d at 646. "The statutes do not materially differ." Ass'n of Citizens to Protect & Pres. the Env't v. FAA, 287 F. App'x 764, 766 n. 3 (11th Cir. 2008). The term "order" under Section 1486 was similarly interpreted as under Section 46110. See, e.g., Atorie Air, Inc. v. F.A.A., 942 F.2d 954, 960 (5th Cir. 1991) (noting that "[t]he term 'order' in this statute has been given expansive construction. . . . To be deemed 'final,' an order under section 1486(a) need not be the culmination of lengthy administrative proceedings. It need only be an agency decision which 'imposes an obligation, denies a right, or fixes some legal relationship'"); Sierra Club v. Skinner, 885 F.2d 591, 592 (9th Cir. 1989) (noting that "[c]ourts have given a broad construction to the term 'order' in Section 1486(a) [46110's predecessor]").

public notice and service of underlying findings of fact is unavailing.  Plaintiffs claim that under 49 U.S.C. § 46105, an agency action is an order only if it is issued in accordance with the procedures described in that section.  That is, it must "include the findings of fact on which the order is based," and "be served on the parties to the proceeding and the persons affected by the order."  49 U.S.C. § 46105(b).

Circuit courts, including the First Circuit, have rejected that the term "order" as used in Section 46110 requires that persons receive notice and an opportunity to comment.  In Aviators, the First Circuit reviewed a "notice of enforcement policy" (the "notice") which provided a specific definition of the term "rest" that appeared in a preexisting regulation requiring flight crewmembers to have a certain amount of rest before assignments.  221 F.3d at 224.  The court held that the notice was an "order" reviewable only by the Courts of Appeals under section 46110 despite the fact that it was issued "without prior notice or rulemaking proceedings."  Id.; see Safe Extensions, Inc. v. F.A.A., 509 F.3d 593, 598, 599 (D.C. Cir. 2007) (noting that "there is no longer any doubt about whether we may review agency actions [under section 46110] when the agency held no hearing," and that "agency actions are reviewable as orders under section 46110 so long as they are final, i.e., so long as they mark the consummation of the agency's decisionmaking process and determine the rights or obligations or give rise to legal consequences"); City of Alexandria, 728 F.2d at 646 (advisory circulars issued without public hearings).[4]  Here, the SOP is likewise an "order" notwithstanding the lack of public notice or proceedings.

---

[4]Moreover, Section 114, entitled "Transportation Security Administration," allows the TSA to issue security directives "without providing notice or an opportunity for comment."  49 U.S.C. § 114(l)(2)(A).

### a.    60-Day Statute of Limitations

Plaintiffs' argument that Section 46110's 60-day statute of limitations necessarily requires notice and hearing is equally to no effect.  Section 46110 states that the petition in the Courts of Appeals "must be filed not later than 60 days after the order is issued," but it carries no notice or issuance requirement.  49 U.S.C. § 46110(a).  Plaintiffs cite no authority for the proposition that public notice of a SOP for the purpose of complying with a 60-day limitations period is required.  To the contrary, under the "reasonable grounds" exception to the 60-day statute of limitations, adequate notice of a SOP may occur at the time a person is informed of the screening policy at the airport which may occur well beyond the 60 days after the TSA issues a SOP.  See Gilmore, 435 F.3d at 1135-36 (finding 60-day limitation did not effect plaintiff's ability to challenge screening policy implemented in September 2001 to which plaintiff was subjected in July 2002 - a policy he first became aware of when he saw a sign at the airport explaining the procedure and was informed of the policy by screening personnel even though he was not provided a text of the policy in advance).[5]

Accordingly, the Court concludes that the SOP is an "order" of TSA within the meaning of Section 46110.   Given that it is an order within the meaning of Section 46110, the jurisdiction for

---

[5]Plaintiffs' further argument that the SOP cannot be an order because it is "secret" and not publicly available is in direct contravention to the numerous cases in which courts have found that the fact that an order may not be publicly available – like the SOP at issue here – has no bearing on whether it is an "order" under section 46110.   See Gilmore, 435 F.3d at 1130, 1133 & n. 8 (finding non-public security directive constituted an "order" which did not have to be provided to plaintiff); Green, 351 F. Supp. 2d at 1125, 1127 (same).  Indeed, the court in Scherfen, 2010 WL 456784, found that TSA's security directive, which established the security protocols for individuals on the No-Fly and Selectee lists, as well as the agency's review of an individual's status vis-à-vis those lists, each constituted an "order" under Section 46110, notwithstanding the fact that plaintiffs did not have access to the actual security protocols and the agency did not disclose their status vis-à-vis the No-Fly or Selectee list.  Id. at *10-11.

the review of the order is invested in the Court of Appeals.  This Court notes that at least one district court has already dismissed a nearly identical challenge to the same SOP at issue in this case and concluded that the matter would be properly filed in the Court of Appeals.  In Corbett v. U.S., 10-cv-24106, slip. op. at 4 (S.D. Fla. Apr. 29, 2011), the court found that "[s]ince Plaintiff's claim squarely attacks a TSA order or regulation concerning airport security, this Court does not have jurisdiction to hear the challenge."  Id.  Similarly, the court in Blitz v. Napolitano, 10-cv-930, (M.D.N.C. Dec. 10, 2010), denied plaintiffs' motion for a temporary restraining order and preliminary injunction challenging TSA's use of AIT scanners and pat-downs under the Fourth Amendment, in part because the court likely lacked jurisdiction under Section 46110.  (Transcript of oral argument, at 52-62, attached as Ex. 2 to Def. Memo).  Accordingly, this Court lacks subject matter jurisdiction to review Plaintiffs' challenge to that order which should be made in the Courts of Appeals in accordance with Section 46110.

## B.     All of Plaintiffs' Claims are Inescapably Intertwined with the SOP

To the extent that the Plaintiffs argue that their claims arise from the SOP but do not challenge the validity of the SOP directly (Pl. Opp. at 14), the Court nonetheless lacks jurisdiction over Plaintiffs' constitutional claims because they are "inescapably intertwined" with the SOP. Statutes "such as Section 46110(c) that vest judicial review of administrative orders exclusively in the court of appeals also preclude district courts from hearing claims that are 'inescapably intertwined' with the review of such orders."  Merritt, 245 F.3d at 187.  "A claim is 'inescapably intertwined' with the review of an administrative order if it alleges that the plaintiff was injured by such an order and that the court of appeals has authority to hear the claim on direct review of the agency order."  Diaz Aviation Corp. v. Alvarez, 556 F. Supp. 2d 94, 98 (D.P.R. 2008) (quoting

Breen v. Peters, 474 F. Supp. 2d 1, 4 (D.C.C. 2007)) (further citations omitted); see Gilmore, 435 F.3d at 1133 n. 9; Merritt, 245 F.3d at 187; Green, 981 F.2d at 521.  Courts have consistently held claims to be "inescapably intertwined" with a review of administrative orders when the plaintiff challenges the procedures and merits of the order.  See, e.g., Diaz, 556 F. Supp. 2d at 98; Gilmore, 435 F.3d at 1133 n. 9; Doe v. FAA, 432 F.3d 1259, 1263 (11th Cir. 2005); Merritt, 245 F.3d at 187. This is so even where the claims involve constitutional challenges.  Green, 981 F.2d at 521 (concluding that the merits of plaintiffs' constitutional arguments were "inescapably intertwined with the review of the procedures and merits surrounding the FAA's order"); Gilbert v. NTSB, 80 F.3d 364, 366-67 (9th Cir. 1996) (holding that because "challenges to the constitutionality of a statute or regulation promulgated by an agency are [generally] beyond the power or the jurisdiction of an agency," the court of appeals may consider such claims "regardless of whether the petitioner presented the claims to the [agency]").  Here, it cannot be said that Plaintiffs' claims are not intertwined with the screening procedures required by the SOP.   Plaintiffs claim they have been injured because of the TSA's screening procedures involving the use of the AIT scanners and enhanced pat-downs.  Such screening procedures were implemented as a direct result of the SOP at issue.  Thus, Plaintiffs' constitutional claims are inescapably intertwined with the SOP and as a result, review of those claims lies exclusively with the Courts of Appeals.

### C.    Application of 49 U.S.C. § 46110 Does Not Deny Plaintiffs Meaningful Review of Their Claims

Plaintiffs argue that they would be deprived of due process in the Court of Appeals. Specifically, they claim that if the Court of Appeals were to hear their Fourth Amendment claim based solely on a record compiled by the government, reviewing factual determinations under a highly deferential standard, Plaintiffs would be denied meaningful review and thus, their right to due

process.   (Pl. Opp. at 16-17).   As an initial matter, courts have widely held that Section 46110 directs to the Courts of Appeals exactly the type of claims Plaintiffs bring here which involve constitutional challenges.  See, e.g., Gilmore, 435 F.3d at 1130 (concerning Fourth Amendment and right to travel claims); Gaunce v. deVincentis, 708 F.2d 1290, 1291, 1293 (7th Cir. 1983) (involving a due process challenge to FAA procedures); Nelson v. DHS, No. 06-0050, 2007 WL 1655344, at *2 (W.D. Va. June 7, 2007) (concerning a constitutional challenge to TSA requirement that drivers license to transport hazard materials must be fingerprinted); Thomson v. Stone, No. 05-70825DT, 2006 WL 770449, at *6 (E.D. Mich. Mar 27, 2006) (involving a Fourth Amendment challenge to TSA screening procedures); Green, 351 F. Supp. 2d at 1125-26 (concerning a Fourth Amendment challenge).

Plaintiffs' reliance on McNary v. Haitian Refugee Ctr., 498 U.S. 479 (1991) to support their argument that they would be denied due process if their claims were reviewed directly by the Court of Appeals is misplaced.  In McNary, undocumented farmworkers claimed that the Immigration and Naturalization Service ("INS")'s administrative process for hearing their amnesty claims was constitutionally defective.  498 U.S. at 487-88.  The Supreme Court held that the district court properly exercised jurisdiction over plaintiffs' claims and found the INA provision inapplicable to plaintiff's due process challenge because, by its express terms, it provided appellate jurisdiction only over individual application decisions made by the INS, not for the denial of due process claim asserted by plaintiffs.  Id. at 491-92.   Thus, the Court of Appeals was precluded from reviewing plaintiffs' claim at all.  In contrast to the jurisdictional provision in McNary, Section 46110 does not so narrowly limit judicial review by the Court of Appeals.  Rather, it provides for broad appellate jurisdiction for a person challenging an "order" issued by the TSA.  49 U.S.C. § 46110(a).  See

Aviators, 221 F.3d at 225; Adams v. F.A.A., No. 95-103, 1995 WL 553630, at *2 & n.3 (E.D. Tex. Sept. 1, 1995) (distinguishing McNary and stating that the "review power of the circuit court of appeals is not modified or restricted in any way in the language of [section 46110]"). Further, in finding that the district court had properly exercised jurisdiction, the Court in McNary noted that the plaintiffs would have needed to "voluntarily surrender themselves for deportation" under the INA provision if they proceeded directly to the court of appeals which would have been "tantamount to a complete denial of judicial review," 494 U.S. at 496-97, and that the administrative record developed during the INS's review of an individual plaintiff's amnesty application for which the court of appeals had exclusive jurisdiction would not be relevant to the plaintiffs' due process claims. Id. at 497. Such is not the case here.

Moreover, the Courts of Appeals have the authority to grant the relief Plaintiffs seek. The Courts of Appeals have the authority to review factual findings in administrative records, to remand to the agency if the record is inadequate, to review new factual affidavits, to order the agency to consider new facts presented by plaintiffs and to refer the case or portion thereof to a special master or even a district court if other factual development is needed. See 28 U.S.C. § 2347; Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 215 n. 20 (1994) (rejecting due process challenge to forum for judicial review because "petitioner's statutory and constitutional claims here can be meaningfully addressed in the Court of Appeals," even if they could never be addressed by the agency's proceedings in the first instance); Aviators, 221 F.3d at 226 (finding that the remedy to petitioner's lack of opportunity to offer rebuttal evidence where agency held no administrative proceeding was to "file a petition tendering evidence and asking the FAA to modify its regulation accordingly"); see

also St. John's United Church of Christ v. City of Chicago, 502 F.3d 616, 629 (7th Cir. 2007).[6] Accordingly, judicial review by the Courts of Appeals would not deprive Plaintiffs of their constitutional right to due process.

It appears that Plaintiffs may still seek redress before the Court of Appeals. Defendants have not argued that Plaintiffs' filing of their complaint was untimely or would be untimely if it were now filed in the First Circuit where section 46110(a) provides an exception for delay, where "there are reasonable grounds for not filing by the 60th day." Plaintiffs provide no reason why the Court of Appeals would not grant an exception in this case as it has done in the past. See Aviators, 221 F.3d at 226 (applying "reasonable grounds" exception under section 46110(a)). In any event, any concerns Plaintiffs have with the 60-day limitations period has no bearing on the jurisdictional effect of section 46110, as that matter would be for the Court of Appeals to resolve. See, e.g., Safe Extensions, 509 F.3d at 603-04 (resolving dispute regarding 60-day timeframe).

## V.    Conclusion

---

[6] The Court also notes that the plaintiffs in EPIC v. Napolitano, No. 10-1157 (D.C. Cir. 2010) bring a similar challenge to the use of the same AIT scanners as that presented in this case directly to a Court of Appeals pursuant to Section 46110. In that case, Plaintiffs allege that use of the AIT scanners violate the Administrative Procedure Act, the Fourth Amendment, the Privacy Act, the Religious Freedom Restoration Act and the Video Voyeurism Prevention Act. Oral argument was heard on March 10, 2011. The Court of Appeals for the District of Columbia has not yet issued a ruling.

For the foregoing reasons, Defendants' motion to dismiss for lack of subject matter jurisdiction is GRANTED.  This matter is therefore dismissed.

**So ordered.**

<u>/s/ Denise J. Casper</u>
United States District Judge